IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

JUANITO JARAMILLO,

        Plaintiff,

v.                                                                                          No. CV 15-01019 WJ/KK

THE GEO GROUP INC.,
JOHN DOE 1, Correctional Officer, in his official capacity,
JOHN DOE 2, Correctional Officer, in his official capacity,
JOHN DOE 3, Correctional Officer, in his official capacity,
JANE DOE 4, Correctional Officer, in her official capacity,
And JANE DOE 5, Correctional Officer, in her official capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S AMENDED MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendant The GEO Group, Inc.'s Motion to Dismiss (**Doc. 6**). Having reviewed the parties' briefs and the applicable law, the Court finds that Defendant's Motion to Dismiss is well taken, and therefore **GRANTED**, as herein described.

### BACKGROUND

Plaintiff Juanito Jaramillo ("Mr. Jaramillo" or "Plaintiff") at all times relevant was a prisoner in the custody of the New Mexico Department of Corrections, housed in the Lea County Correctional Facility in Hobbs, New Mexico. The Defendant GEO Group, Inc. ("GEO" or "Defendant") has a contract with the New Mexico Department of Corrections to run the daily operations of the Lea County Correctional Facility. On May 27, 2014, a physical fight between

several inmates occurred around 3:00pm. As a result of the fight, the entire pod (H-2-E) where the fight occurred was on "lock-down."

Three hours after the fight, the residents of the pod, approximately fifty inmates, were strip-searched. Groups of ten inmates were brought into the hallway of the H-2-E pod by Correctional Officers. Once in the hallway, a group of five inmates were placed facing the wall and required, one by one, to remove all of their clothing, squat down, lift and hold their testicles, and cough. Plaintiff alleges that this was intentionally viewed by Defendant Correctional Officers John Does 1, 2, and 3, other inmates being searched at the same time, and inmates in the hallway waiting to be searched. Defendant Correctional Officers Jane Does 4 and 5 were standing near the door to the gym and viewed Mr. Jaramillo and other inmates during the search. Additionally, two security cameras in the hallway transmitted a live video of the search as it occurred. Mr. Jaramillo alleges that this video was likely viewed by other Correctional Officers. Neither the Plaintiff nor any other inmates in the pod had experienced a strip search that was conducted in groups, in view of cameras, and in view of female Correctional Officers.

Mr. Jaramillo alleges that GEO has deprived him of his right to be secure against unreasonable search of his person in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Specifically, Mr. Jaramillo alleges that GEO has a custom of allowing Correctional Officers to routinely ignore and violate the facility's policy and GEO's policy without consequences. GEO's stated policy is to follow the recommendations of the American Correctional Association, which requires non-exigent searches of inmates to be conducted in a private place out of sight of other prisoners and staff not involved in the search. Mr. Jaramillo alleges that GEO's custom was that policy could be ignored by the Correctional

Officers and no disciplinary action would be taken against them. Thus, the actual custom of GEO was that Correctional Officers could conduct themselves without regard to GEO's stated policy.

Mr. Jaramillo also alleges that the manner in which the search was conducted was unreasonable because no emergency existed at the time of the search. The inmates involved in the fight had already been identified and removed, and three hours passed until the strip search began. Thus, no circumstances existed that prevented each inmate in the pod from being searched individually and out of view of inmates and female Correctional Officers.

Mr. Jaramillo and other inmates filed grievances following the strip search and received documentation from the Lea County Correctional Facility stating that their grievances were being referred for review. Despite filing an appeal five months after receiving no update regarding the status of his grievance, Mr. Jaramillo alleges that no action was taken by GEO to investigate the matter or discipline the correctional staff.

Mr. Jaramillo argues that his limited privacy right while incarcerated affords him the protection from having the strip search viewed by other inmates and female Correctional Officers. Thus, Mr. Jaramillo seeks judgment against the Defendants for violation of his right to be free from unreasonable search pursuant to 42 U.S.C. § 1983.

Plaintiff filed his Complaint in the First Judicial District of New Mexico, County of Rio Arriba, No. CV-2015-00347 (**Doc. 1**, Ex A, at 1). Defendant timely removed this case to federal court. Defendant filed an Amended Motion to Dismiss (**Doc. 6**) on November 17, 2015. Plaintiff filed an Amended Complaint (**Doc. 12**) and Response in Opposition to Defendant's Amended Motion to Dismiss (**Doc. 13**) on November 29, 2015. Defendant then filed its Reply (**Doc. 15**) and a Motion to Dismiss Amended Complaint (**Doc. 17**) on December 9, 2015. Defendant's Motion to Dismiss Amended Complaint alleges that the same deficiencies present in Plaintiff's

Complaint remain in Plaintiff's Amended Complaint, in essence contending that claims made in its Motion to Dismiss apply equally to Plaintiff's Amended Complaint.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *See id*. Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## DISCUSSION

### I. Plaintiff's Complaint Does Not Allege Facts to Support a Fourth Amendment Claim

Defendant argues that Mr. Jaramillo's Complaint fails to allege facts supporting a plausible Fourth Amendment claim. The Supreme Court has articulated a balancing test to determine whether a particular search runs afoul of the Fourth Amendment. Courts must weigh "the need for a particular search against the invasion of personal rights that the search entails," considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S.

520, 559 (10th Cir. 1979). GEO admits that the first factor, the scope of the intrusion, may weigh in Mr. Jaramillo's favor, but argues that the remaining factors do not.

In his Response, however, Mr. Jaramillo agrees that the scope of the search and justification for the search were reasonable. Mr. Jaramillo argues only that the manner and place of the search were unreasonable. Mr. Jaramillo's Complaint alleges that the search was conducted in groups, in a hallway monitored by two security cameras, and in view of other inmates and female guards. Mr. Jaramillo argues that these circumstances, most especially being viewed by female guards, violated his limited constitutional right to privacy. *See Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993); *Levoy v. Mills*, 788 F.2d 1437 (10th Cir. 1986). Mr. Jaramillo argues that this opposite gender viewing of a strip search can give rise to a constitutional claim. *See Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982).

Defendant counters that none of the cases upon which Mr. Jaramillo's relies are on point. In *Cumbey*, the plaintiff alleged that he was regularly viewed in his cell by female Correctional Officers while undressing or using the toilet. In reversing the district court, the Tenth Circuit held that "plaintiff's statement that the male inmates were subject to a 'certain amount of viewing' by female guards does not necessarily fall short of a cognizable constitutional claim," while noting that "the frequency of such practices is important." 684 F.2d at 714. GEO argues that the on-going and routine violations in *Cumbey* differentiate it from the one-time strip search in this case. Similarly, *Fortner* involved allegations that female Correctional Officers spied on inmates while in their cells and the shower, and also flirted with and seduced the inmates. *See* 983 F.2d at 1027. GEO argues that, again, *Fortner* involved routine abusive and harassing behavior by female Correctional Officers that is not present in this case. The final case Mr. Jaramillo cites, *Levoy v. Mills*, involved an allegedly unjustified body cavity search which the

district court dismissed as frivolous. *See* 788 F.2d at 1438. The Tenth Circuit found that if the plaintiff "was subjected to a body cavity search without any justification whatsoever, it is possible that Mr. Levoy can make a rational argument on the law and facts to support his Fourth Amendment claim." *Id*. at 1439. GEO argues that *Levoy* involved no allegation of viewing by Correctional Officers of the opposite sex. Further, the crux in *Levoy* involved the lack of justification for the search, while Mr. Jaramillo concedes that justification for the search in this case was reasonable.

     Mr. Jaramillo next argues that absent an emergency situation, a group strip search in front of other inmates and opposite gender guards can rise to a Fourth Amendment violation. In support, Mr. Jaramillo cites a Massachusetts state case in which a fight in the prison yard triggered an emergency situation that warranted an immediate search of the prisoners. *See Roberts v. Dept. of Correction*, No. 0200460, 2002 WL 31677190, at *3 (Mass. Sup. Ct. Oct. 15, 2002). Mr. Jaramillo argues that the fact the search in this case took place three hours after the fight indicates that no emergency situation existed. GEO counters that deference must be afforded to prison authorities in matters relating to institutional security. *See Turner v. Safley*, 482 U.S. 78, 89–90 (1987). Mr. Jaramillo's admission that the pod stayed on "lock-down" for days after the search indicates that an emergency situation still existed. GEO points to a First Circuit case involving a body cavity search following a riot. *See Cookish v. Powell*, 945 F.2d 441 (1st Cir. 1991). There, the court determined that "[t]he duration of an 'emergency,' however, is not always (and perhaps not often), it would seem marked with bright lines of demarcation. . . . At what point an emergency has ended, rather than capable of pinpoint reference, is more likely determined by placement somewhere on a continuum of time." *Id*. at 448–49. GEO concludes that Mr. Jaramillo's own subjective assertion that there was no emergency does not make it so.

The Court finds that using the four factors in *Bell v. Wolfish* to balance the need for the particular search against the invasion of personal rights, the search of Mr. Jaramillo did not violate his limited constitutional right to privacy under the Fourth Amendment. Mr. Jaramillo concedes in his Response (**Doc. 13**) that the scope of the search and justification for the search were reasonable. Thus, he contests only that the manner and place of the search were unreasonable.

As GEO argues, other circuits have held that a strip search of prison inmates is not unconstitutional simply because it is conducted in view of female Correctional Officers. *See Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) ("Given these principles, which we endorse, there is no basis for Letcher's claim of a constitutional violation due to the presence of female guards during the strip search."); *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (determining that the infrequent and casual viewing from a distance of nude male prisoners by female guards did not unreasonably infringe upon the inmate's privacy rights). In this case, Mr. Jaramillo alleges that two female Correctional Officers were able to see him and other inmates from a distance. Mr. Jaramillo further alleges that this was the first time a strip search occurred in the presence of female Correctional Officers.

Other circuits have also held that a strip search is not unconstitutional simply because those being searched can be viewed by other inmates. *See Elliot v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994) (finding that the presence of other inmates, guards, and several bystanders during a search following an emergency situation was constitutionally reasonable); *Thompson v. Souza*, 111 F.3d 694, 697 (9th Cir. 1997) (finding a strip search within view of other prisoners to be reasonable).

While not addressed by Mr. Jaramillo in his Response, GEO's Motion to Dismiss addresses two key Tenth Circuit cases that GEO argues are readily distinguishable from this case. In *Hayes v. Marriot*, the Tenth Circuit reversed the district court's entry of summary judgment in favor of prison officials. *See* 70 F.3d 1144 (10th Cir. 1995). There, the inmate alleged that he was subjected to a full body cavity inspection in the presence of over one hundred people, including female Correctional Officers and nonessential prisoner personnel such as secretaries and case managers. *See id.* at 1147. The Tenth Circuit concluded that the district court erred in determining that a single or minimal viewing of a prisoner by prison officials of the opposite sex could never constitute a Fourth Amendment violation. *See id.* Rather, while the frequency with which prison guards watch inmates of the opposite sex is an important factor, "we have also concluded that a prisoner's right to privacy may be violated by a single search." *Id*. (citing *Levoy v. Mills*, 788 F.2d 1437 (10th Cir. 1986)).

While supporting Mr. Jaramillo's position that his single strip search could rise to a Fourth Amendment violation, the Court finds marked differences between the search of Mr. Jaramillo and the search in *Hayes*. First, Mr. Jaramillo alleges that the female Correctional Officers were standing near the door to the gym where the inmates were held once they had been searched (**Doc. 1**, at ¶ 34). The two female Correctional Officers present appear to be actively involved in a security function at the time of the search. In *Hayes*, nonessential prisoner personnel not involved in a security function were present. Second, the search of Mr. Jaramillo was related to the legitimate penological interest of ensuring the security of the facility following a fight. In *Hayes*, an unsworn statement by an administrative officer asserted that the search was conducted under the institution's general policy to conduct regular searches. *See id*. at 1147. Thus, the search in *Hayes* was absent an emergency situation and simply a routine search. The

Tenth Circuit also found that the administrative officer's statement failed to explain the functions of the female Correctional Officers present, why those functions were important to the search, and the reason for conducting the search in a large common area. *See id*. By contrast, Mr. Jaramillo and the other inmates were searched in groups of five after the pod was placed on "lock-down" following the fight. Finally, there is no indication that the search was conducted in a manner designed to humiliate or embarrass Mr. Jaramillo. In sum, the Court finds that the manner and place of the search were reasonable. Given that all four factors in *Bell v. Wolfish* weigh toward GEO, the Court finds that the search of Mr. Jaramillo did not violate his limited constitutional right to privacy under the Fourth Amendment.

## II.     Plaintiff's Complaint Fails to Allege a Policy or Custom

In finding that the search of Mr. Jaramillo did not violate his Fourth Amendment rights, no liability against GEO can be found "because there was no constitutional violation committed by any of the individual defendants." *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996) (addressing municipal liability). Even if a Fourth Amendment violation did occur, Defendant GEO alternatively argues that Plaintiff's Complaint does not contain allegations suggesting that a policy or custom of GEO was the moving force behind the allegedly unlawful search of Mr. Jaramillo. To establish a § 1983 claim based on custom, the plaintiff must adequately allege: (1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the defendant's employees; (2) deliberate indifference to or tacit approval of such misconduct by the defendant's policymaking officials after notice to the officials of that particular misconduct; and (3) that the plaintiff was injured by virtue of the unconstitutional acts pursuant to the custom, and that the custom was the moving force behind the unconstitutional acts. *See Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).

As Mr. Jaramillo's Complaint admits that he and other inmates had never experienced a strip search conducted in that manner, Defendant argues that such an isolated incident is insufficient to establish a custom or policy. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). Without establishing the existence of a continuing, persistent, and widespread practice of unconstitutional misconduct, Plaintiff cannot establish that a policy or custom served as the moving force behind the search. *See Gates*, 996 F.2d at 1041. Further, Mr. Jaramillo's allegation regarding the failure to investigate his grievance does not rise to "unconstitutional misconduct." *Id*.

Mr. Jaramillo responds that the custom he alleges is that GEO allows Correctional Officers to ignore policy and act as they wish. While the alleged strip search was one instance of this custom, the fact that Mr. Jaramillo's grievance and the grievances of other inmates were not fully investigated or did not result in discipline against Correctional Officers shows that the custom was the moving force behind the violation of Mr. Jaramillo's rights. Thus, Mr. Jaramillo does not contend that he bases any violation of his rights on the failure to investigate his grievance. Rather, the failure to investigate alleges facts that show proof of GEO's custom to not discipline Correctional Officers for policy violations.

The Court agrees with GEO that Mr. Jaramillo has failed to properly allege that GEO had a custom of routinely ignoring or violating GEO's policies regarding strip searches. Mr. Jaramillo has not shown that the single strip search and failure to investigate his grievance evidences a practice "so widespread as to have the force of law." *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997). Further, Mr. Jaramillo has not identified a policymaking official that was either deliberately indifferent to or tacitly approved of the alleged misconduct. *See Gates*, 996 F.2d at 1041. Additionally, Mr. Jaramillo has not sufficiently linked

the alleged custom to the alleged violation of his Fourth Amendment rights. In order to establish the element of causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013). Mr. Jaramillo's assertion that Correctional Officers are generally able to act with impunity does not demonstrate a widespread practice of unconstitutional misconduct. Thus, the Court alternatively finds that Mr. Jaramillo's Amended Complaint fails to allege that a policy or custom of GEO was the moving force behind the alleged violation of his Fourth Amendment rights.

Accordingly, the Court finds that Defendant's Motion to Dismiss is well taken and, therefore, **GRANTED**.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE